## Case No. 14,362.

### UNION BANK OF GEORGETOWN v. SMITH.

[4 Cranch, C. C. 21.] [1]

Circuit Court. District of Columbia. Aug. 2. 1830.

ADMINISTRATORS—ORDER OF PAYMENT OF DEBTS —LEX FORI.

In the administration of the estate of a deceased person. debts are always to be paid according to their respective dignity, as regulated by the law of the country where the representative of the deceased acts. and from which he derives his powers: not by the law of the country where the contract was made.

[Cited in Tyler v. Thompson 44 Tex. 497.]

The case agreed states that "Samuel Robertson. a native of the state of Maryland. a purser in the navy of the United States, and as such, purser for several years before his death. stationed and domiciled at Norfolk. in the state of Virginia, died in the year 182-. at Bedford. in Pennsylvania. insolvent. and indebted to the plaintiffs residing in the District of Columbia. on simple contract entered into there. which debt still remains due and unpaid; and also died indebted to one —— Thompson. residing in Virginia, upon a specialty executed there, in a sum exceeding the whole amount of assets in the hands of the defendant [Clement Smith] to be administer-

[1] [Reported by Hon. William Cranch. Chief Judge.]

ed. The said Robertson having died possessed of personal assets in Washington county, in the District of Columbia, the defendant obtained letters of administration upon his estate. in that county, and has collected, and now holds the sum of $8,390.01½. The plaintiffs claim a dividend of the assets, according to the laws of administration in force in that county. The defendant resists payment. upon the ground that the said Thompson claims a priority of payment, as holder of a debt due by specialty, according to the laws of administration in Virginia, where. it is contended. the deceased was domiciled. at the time of his death. and where the debt was contracted, and the obligation given."

J. Dunlop. for plaintiffs.

His residence in Virginia was as purser of the navy-yard. at Norfolk. in public employ. This is not a domicil. within the meaning of that term, in the cases where distribution is to be according to domicil. That principle is founded on public policy—comity between nations—to encourage foreign commerce. The cases are where the parties claim under the bounty of the deceased, or as heirs and distributees. Bempde v. Johnstone. 3 Ves. 200: Somerville v. Lord Somerville. 5 Ves. 786: The Venus, 8 Cranch [12 U. S.] 253. There is no case in which the creditors, citizens of the country. have been excluded or postponed to foreign creditors. under a foreign law. The contract is to be expounded according to the lex loci contractûs. but the remedy is to be according to the lex fori. The Virginia creditor must come here for his remedy. In Harvey v. Richards [Case No. 6,184]. there was no conflicting law of the state that prevented Mr. Justice Story from decreeing according to the principles of the law of nations. There were no debts to be paid. The question was wholly as to the rights of foreigners residing abroad. As between them. the law of their country was to be the rule of decision. The opinior. of Mr. Justice Story (11 Fed. Cas. p. 760) is a mere dictum. His attention was not drawn to this particular point. He was contemplating only the surplus. after payment of the debts.

Mr. Dunlop also cited the testamentary system of Maryland. in force in this county (section 2): c. 3, § 11; c. 8. § 17; c. 5, § 2: Harvey v. Richards [supra]; Richards v. Dutch, 8 Mass. 506. 515: Stevens v. Gaylord. 11 Mass. 257, 264. 269: Hunter v. Potts. 4 Term R. 182, 186. 189. 191, 194; Sill v. Worswick. 1 H. Bl. 690: De Sobry v. De Laistre, 2 Har. & J. 224; U. S. v. Harrison. 5 Cranch [9 U. S.] 299.

Mr. Lear. contra. Domicil depends upon circumstances. If his residence be for his private purposes. it is a domicil. But the domicil is admitted in the state of the case. The question is not open.

THE COURT said they did not consider the question of domicil open under the words of the case. as stated.

Mr. Lear. The law of the domicil is the law of the contract; and the law of priority of payment, in cases of deceased insolvents, is part of the contract; and creditors in Virginia take a bond rather than a note, because the bond-debt has priority of payment. They have, therefore, a right to the same priority, in all countries. Pipon v. Pipon, Amb. 25; Sill v. Worswick, 1 H. Bl. 690; Philips v. Hunter, 2 H. Bl. 402–406; Thorne v. Watkins, 2 Ves. Sr. 35· Bruce v. Bruce, 2 Bos. & P. 229.

R. S. Coxe, on the same side. Personal property has no locality; it follows the person, and must be transferred and transmitted according to the law where the owner is. This is the foundation of the rule of the law of domicil. Harvey v. Richards [supra]. If a man die, leaving goods in twenty-four states, there must be twenty-four administrations, if each is to administer according to the law of the place where goods are found. If the Virginia creditor had taken out letters of administration in Virginia, he might have come here and obtained these assets and taken them to Virginia, where they would have been liable to the Virginia law of priority. Stevens v. Gaylord, 11 Mass. 263 (Judge Jackson's opinion). Every administration, not taken out in the place of domicil of the deceased, is an ancillary administration, although no administration should be ever taken out in the place of domicil. In De Sobry v. De Laistre, 2 Har. & J. 224, there was no question as to the rights of creditors. The general rule is, that the effects must be distributed according to the law of the domicil. It is incumbent on the plaintiffs to show the exception in favor of creditors. If the law of the domicil made the debt primarily chargeable upon real estate, could the creditor come here and charge the personal property, in the first instance?

As to preference of our own citizens. Mr. Lear cited Folliott v. Ogden, 1 H. Bl. 130, 131; and Mr. Coxe cited Toll. Ex'rs (Am. Ed.) 259; Brodie v. Barry, 2 Ves. & B. 130; Drummond v. Drummond, 6 Brown, Parl. Cas. (New Ed.) 601; Decouch v. Sevitier, 3 Johns. Ch. 190, citing Huberus, De Conflictu Legum; Holmes v. Ramsen, 4 Johns. Ch. 460.

Mr. Key, in reply. The administrator is bound by his oath and by his bond, to administer the effects according to law; and the law directs that all creditors, except judgment creditors, should be paid pari passu. This is a suit by a creditor domiciled here; the debt was contracted here, and it may be presumed, upon the credit of the funds here; but a Virginia creditor says his claim is superior in dignity, and must be first paid, according to the law of Virginia. Suppose he assigns his Virginia bond to a citizen of the District of Columbia, it is conceded, by the opposite counsel, that the priority would be assigned with the bond. Suppose the bond had been made here and assigned to a Virginia assignee, it would upon the same principle, be equally entitled to priority, because the effects here must be distributed according to the law of the domicil. So, if a Maryland creditor of a Maryland debtor were obliged to go into Virginia, and sue the Virginia administrator there, he would be entitled to an equal distribution, although there should be also bond debts. This priority cannot exist in the lifetime of the debtor; it is only given by the positive law of the country where the fund is found. By comity, the nation in which the fund is found, if it be not the nation of the domicil of the deceased, will distribute that fund according to the law of the domicil, among such as are entitled to the succession. Personal property originally extends only to goods in possession. When the owner dies the possession is gone, and is no longer evidence of property. At common law no individual had a right to it; there was no right of succession. It is a right depending entirely on positive municipal law. The owner had no natural right to dispose of it after his death. Neither his creditors nor his children had, any natural right to the goods after his death. The law makes a will for him if he does not make one for himself. The law of the domicil regulates this matter. The statute of distribution is a mere substitute for his will. The distributees are as much the objects of his bounty as if they claimed under his will. By not making a will he shows his intent that the distributees shall inherit. He might have cut them off. This comity is only applicable to the right which the owner has voluntarily to dispose of his effects, where such disposition is not contrary to his contract, nor to the rights of creditors, nor to the municipal laws of the country, where the fund is; made for the security of creditors, or for the due administration of the fund. The reason of the principle applies only to the distribution of the fund to be distributed among those who are entitled to the succession. So are the cases, Pearsall v. Dwight, 2 Mass. 84; so Chancellor Kent, in 4 Johns. 478, says, "If there be no law of the country against it," &c., and in page 471, "it is admitted in all cases," &c., "where no positive law intervenes." So in quoting Huberus, "sine suo, suorumque prejudicio;" and again, "except in cases where it is not against the positive law," &c.

THE COURT (nem. con.) stopped Mr. Key, and said they were, at present, satisfied. CRANCH, Chief Judge, said he would look into the cases, and if any doubt should arise, he would mention it to the counsel.

CRANCH, Chief Judge. If I understand the argument in support of this defence, it is this: Every contract is to be expounded, and to have effect, according to the law of the place where, or in reference to which, the contract was made. By the law of Virginia where this specialty contract with Thompson was made, it is entitled to priority of

payment out of the effects of the deceased debtor. That those effects are to be administered according to the law of the place of domicil of the debtor at the time of his death, although found in a jurisdiction where a different rule of administration prevails. That as all the rights in relation to personal property depend upon the law of the place of domicil of the owner, the effects here must either be transmitted to that place of domicil for distribution, or must be distributed here according to the laws of that place. Therefore, either upon the ground that the priority of payment is a privilege annexed to, or is part of, the original contract, and therefore accompanies it wherever it is to be enforced; or upon the ground that the personal estate of the deceased is to be distributed, or disposed of, according to the law of the domicil, it is contended that this debt due by specialty, to the Virginia creditor, is entitled to priority of payment out of the assets in the hands of the defendant.

The principal case cited in support of this defence is Harvey v. Richards [Case No. 6,-184], decided by Judges Story and Davis, in the circuit court for the district of Massachusetts, in the year 1818; and this is relied upon, not for any point decided in the cause, but for certain dicta which fell from the learned judge who pronounced the opinion of the court. Mr. Justice Story, speaking of the opinion of the supreme judicial court of Massachusetts in the cases of Richards v. Dutch and Dawes v. Boylston, infra, in which that court had decided that the personal effects of a foreign testator, collected there, must be sent to the foreign tribunal for final settlement and distribution, says, "But no reasons are given for this particular doctrine." "There is, too, a qualification of its doctrine in favor of creditors, the ground of which it would be most desirable to ascertain. Why should not legatees and distributees be entitled to recover out of the assets here, as well as creditors? It is true that legatees claim by the bounty of the testator; but it is a legal right as fixed and vested as the right of a creditor; and as to distributees the case is still stronger; for that rests not on the bounty of the intestate, but on the law of the land, which at the same time enables the creditor to receive his debt out of the assets, and the next of kin to claim the residue. If it be said that it belongs to the public policy of the country to sustain the claim for debts due to its citizens, it seems to me no less to belong to that policy to sustain any other claims of its citizens which are founded in justice and law. If it be said that the assets are to be distributed by a foreign law, and it is very difficult and laborious to learn what that law is, and to apply it correctly, the same objection applies to the payment of debts. The priority of debts, the order of payment, the marshalling of assets for this purpose, and the cases of insolvency, the mode of proof as well as distribution, differ in different countries. And if, in case of debts, the court here is to apply the lex domicilii, the same embarrassment will arise as in other cases of distribution to the next of kin. There is no more difficulty in the order of payment of legacies than of debts; and courts of law must, in these cases, ascertain and apply the foreign law, precisely as they do in other cases. I pressed the learned counsel for the defendant, at the argument for a solid ground on which to sustain the distinction in favor of creditors, either upon principles of national comity or public convenience, or substantial justice. I heard no vindication of it in either view. And cases may readily be imagined in which such a distinction might work injustice. Suppose that by the lex domicilii the debts are primarily a charge upon the realty, and not on the personal estate, shall the creditor here be permitted to exhaust the personal assets here, when the succession to the real and personal estate may be different in the foreign country. Suppose the assets abroad and at home have a different order of succession and distribution, shall the creditor here be permitted to defeat that order? If not, then the court here must apply the lex domicilii to protect the heirs, and must ascertain the nature and extent of that law; and if so, why not proceed to distribute the property among those who are the cestuis que trust entitled to it?" And he says, "I confess myself unable to admit the distinction in favor of creditors, without admitting, at the same time, the like rights in favor of legatees and heirs; nor have I been able to find that distinction sustained, or adverted to, in any other authorities."

The argument, drawn from these expressions of the judge, is this: It is admitted on all hands that the surplus of a deceased foreigner's movable goods, after payment of his debts, is to be distributed according to the law of the domicil. The judge cannot perceive any reasons to distinguish between the case of distributees and that of creditors. If there be none, then the personal effects found here, if insufficient to pay all his debts, must be apportioned among his creditors according to the law of his domicil, and not according to the laws in this country. But the question before the judge was, whether his court had a right to distribute the surplus, or was bound to send it for distribution to a foreign tribunal: and he argues from the admitted right of the court to order the debts to be paid out of the fund, that it had also a right to distribute the surplus. The rule, by which the distribution of the surplus should be made, was admitted. There was no question as to the rule by which the debts should be paid. The argument, that because the court had a right to order the payment of the debts, it had also the right to order the distribution of the surplus, cannot be converted into an argument.

that because that distribution is to be made according to the law of domicil, therefore the order of the payment of the debts of the testator is to be regulated by the same law. The rule that the succession of movables is to be regulated by the law of the domicil of the deceased is now a well-settled rule of the law of nations and will prevail wherever it does not interfere with the municipal law of the place where the effects are found. It results from the principle, that the owner of personal goods has a right to dispose of them wherever they may be. Every sovereign is interested in the wealth of his subjects, wherever situated, because in proportion to that wealth will be his capacity to raise a revenue for the support of his government. Vatt. Law Nat. Bk. 2, c. 7, § 81. An alien friend has a right, by the law of nations, to withdraw his funds whenever he may please. If he is restrained by the government of the country it becomes a national affair, to be settled by negotiation or war. The sovereign of the owner of the goods, having such an interest in them, has a right, (in case his subject shall not in his lifetime have directed the succession of the goods,) to provide for that succession by law: for the goods composing part of the wealth of the nation are always under the protection of the sovereign. Id. Bk. 2, c. S. §§ 109, 110. But the sovereign of the country, in which the goods are found, is equally bound to protect the wealth of his subjects; and if the foreign owner of the goods die indebted to his subjects, he may insist that such debts shall be paid before the goods are withdrawn from his jurisdiction. Every civilized nation is bound to afford to all persons within its jurisdiction the means of obtaining justice; but whoever applies to the tribunals for justice, is bound to receive it according to the forms, and subject to the regulations of the country to whose forums he resorts. We are bound by the comity, if not by the law of nations, to afford to foreigners, as well as to our own citizens, the means of obtaining payment of the debts due to them; and if the funds of a foreigner are found here, they may, by the municipal law of the country, be made liable for the payment of such debts; but those who resort to the funds, whether they be foreigners or citizens, must be content to take their remedy in such manner, and to such extent, as the municipal law will permit. It is not for a foreigner to say, that if the funds were in his own country his debt would have a preference, unless, indeed, a lien shall have attached before the funds shall have been subjected to the municipal law of this country; in which case he might, perhaps, be considered as owner to the extent of such lien. But with regard to the distribution of the surplus, the sovereign of the country in which a foreigner's goods are found, has no concern. He has no interest but to protect it as he is bound to protect all the other

property of strangers within his jurisdiction. He cannot, consistently with the law of nations, detain it from the country to which it belongs. Hog v. Lashley, 6 Brown, Parl. Cas. 580, 581. But if the subjects of that country come to his tribunals for aid to assert their rights, he is bound by the comity of friendly nations, to grant it; and in granting it, his tribunals will decide upon those rights according to the laws of the country to which the property belongs, and under whose laws they derive their title. Hence results the difference between the rule for the order of payment of debts, which must be according to the lex loci rei sitæ, and the rule for the order of distribution of the surplus, which must be according to the lex loci domicilii. See Hog v. Lashley, ut supra.

All the cases cited by the defendant's counsel are cases of distribution, or disposition of the surplus; which, in truth, is the only part of the property subject to the lex domicilii: for all that part of the property which goes to the payment of debts is to be disposed of according to the lex loci rei sitæ; it being made liable only by the municipal law of that place. The law of nations only decides the question, what law shall regulate the succession of that property, of which the deceased could have disposed in his lifetime: it does not decide the question by what law his property shall be applied to the payment of his debts. In this country, and probably in most other civilized countries, the personal estate of a deceased person cannot be lawfully administered without some special authority derived from the municipal law of the place where the property is found; and, in general, security is required, that the executor or administrator should administer it according to certain rules prescribed by that law. Such authority and such security are required by the laws in this country. After payment of judgments and decrees against the deceased, the other debts are to be paid pari passu, whether due by specialty or by simple contract. A foreign creditor cannot participate in this fund unless in conformity with these municipal regulations. He must take his dividend according to the rule prescribed. None of the authorities which show that the distribution is to be made according to the lex domicilii, allege that the same law applies to the payment of debts; but almost all of them exclude from the operation of the rule, cases in which the rule is contravened by the municipal law of the country in which the property is found. Thus, in Hunter v. Potts, 4 Term R. 186, Mr. Law, arguing in favor of the validity in a foreign country, of an assignment under the English bankrupt acts, says, "Both Lord Talbot and Lord Mansfield recognized the right of suit by the assignees in foreign countries; to admit which is to admit the substitution as made by the lex loci, which always takes place as to movable effects, except as far as it is contravened by the mu-

nicipal laws of those countries where the character is to be exercised." And Mr. Bower, who argued the same case on the other side, in pages 189, 190, says, "Governments so act with confidence to each other, that they will recognize one another's laws, provided they do not clash or interfere with their own, or injure their own subjects." Lord Kenyon, in delivering the opinion of the court in the same case, says, "Therefore the only question here is, whether or not the property, in that island, passed by the assignment, in the same manner as if the owner, the bankrupt, had assigned it by his voluntary act. And that it does so pass, cannot be doubted, unless there were some positive law of that country to prevent it. Every person, having property in a foreign country, may dispose of it in this; though, indeed, if there be a law in that country, directing a particular mode of conveyance, that must be adopted." In Sill v. Worswick, 1 H. Bl. 691, Lord Loughborough, in delivering the opinion of the court, and speaking of the rules of personal property being governed by the law which governs the person of the owner, says, "But it may happen, that in the distribution of the law in some countries, personal property may be made the subject of securities, to a greater or less extent, and in various degrees of form. It is in those cases only that any difficulty has occurred." And in page 693, he says, "It by no means follows that a commission of bankrupt has an operation in another country against the law of that country." So in the case of Philips v. Hunter, 2 H. Bl. 405, the court said, "This being the principle of those laws " (the bankrupt laws), "it seems to follow, that the whole property of the bankrupt must be under their control, except in cases which directly militate against the particular laws of the country in which it happens to be situated." "It is true," (say the judges in that case,) "that the laws of the country where the property is situated, have the immediate control over it, in respect to its locality, and the immediate protection afforded it; yet the country where the proprietor resides, in respect to another species of protection afforded to him and his property, has a right to regulate his conduct relating to that property." "The property, which this country protects, it has a right to regulate." And in page 409, they say, "When it is argued, that in many instances the bankrupt laws of this country do not operate in another, it is to be observed, that though to some purposes they do not, yet to all civil purposes they do, when such purposes are neither repugnant to the law of the particular state, nor to the general law of nations."

Lord Kames, in his Principles of Equity (Bk. 3, c. 8, § 3, p. 275), says, "Movables, on the other hand, occasionally in Scotland, belonging to a foreigner, are held to be foreign effects, not regulated by the law of this country. The occasional connection with this country yields to the more intimate connection with the proprietor who is a foreigner. For this reason, a foreign assignment of such movables, formal according to the lex loci, will be sustained by the court of sessions acting as judges in foreign matters. And for the same reason, an executor named by the proprietor, will have a good claim to such movables, provided he complete his title secundum consuetudinem loci. And even though the proprietor here occasionally fall sick and die, the court of session will prefer those who are next of kin according to the law of his country, and if he be an Englishman, for example, will sustain letters of administration from the prerogative court, as the proper title." "The nomination of an executor by will, is, it is true, an universal title, effectual jure gentium, which, therefore, ought to be sustained everywhere; but letters from the prerogative court of Canterbury, for example, will not be sustained here even though granted to the next of kin. The powers of that court are confined within its own territory, and therefore the next of kin must be confirmed here." In page 277, he says, "With respect to process, as well as with respect to legal execution, no circumstance is regarded but locoposition merely, however occasional or accidental. A judge has authority over every person and every legal subject within his territory; and to whatever country goods may belong, the proprietor, or a creditor, must claim them from the court to which they are subjected for the time. No other judge can give authority to apprehend the possession, or to seize them by execution for payment of debt." And in section 4, p. 278, he says, "Deliberating upon this matter, it appears evident, that as payment must be demanded in the forum of the debtor, the form of the action which is brought against him, the method of procedure, the execution that passes upon the decree, and what person is liable as heir in place of the debtor dying before payment, must all be regulated by the law of the debtor's country. On the other hand, with respect to titles derived from the creditor, whether inter vivos, or by succession, these naturally are regulated by the law of the creditor's country. Thus, an assignment, made in Scotland according to our form, of a debt due by a person in a foreign country, ought to be sustained in that country as a good title for demanding payment. And a foreign assignment of a debt due here, regular according to the law of the country, ought to be sustained by our judges." "The same of succession. If a man make a settlement of his effects, according to the forms of his own country, that settlement ought to be sustained everywhere And if he die intestate, the heir that is called to succeed him by the law of his own country, ought to be entitled to his movable effects, wherever situated, and to demand payment from his debtors, wherever found. The reason is, that

when a man forbears to make a deed regulating his succession, it is understood to be his will, that the law of his own country take place. If he be satisfied with the heir whom the law calls to his succession, he has no occasion to make a settlement." In 1 Atk. 19, Lord Hardwicke says, that although the chancellor has no power over the persons of foreigners any longer than while they are in England, yet he may lay his hand on any property they may have there in stocks, &c. In Potter v. Brown, 5 East. 131, where the question was whether a discharge of a citizen of Maryland, under the insolvent law of Maryland, was a bar to the action of an English creditor suing in England, Lord Ellenborough said, "It is every day's experience to recognize the laws of foreign countries as binding on personal property; as in the sale of ships condemned as prize by the sentences of foreign courts, the succession to personal property, by will or intestacy of the subjects of foreign countries. We always import, together with their persons, the existing relations of foreigners as between themselves according to the laws of their respective countries; except indeed where those laws clash with the rights of our own subjects here, and one or other of the laws must necessarily give way, in which case our own is entitled to the preference. This having been long settled in principle and laid up among our acknowledged rules of jurisprudence, it is needless to discuss it any further." That cause (Potter v. Brown) was decided upon the principle that as the Maryland law clashed with the rights of the English subjects; and that, as one or the other of those laws must give way, the preference was to be given to the English law.

In Hog v. Lashley, 6 Brown, Parl. Cas. 579, the counsel who argued in support of the power of the owner of the property to transfer it, wherever situated, said, "A man may, no doubt, alienate his property of whatever kind, provided he does not thereby transgress the law of the country where it is situated." And again in page 582, it is admitted by the counsel, that "it is a general rule with respect to process and execution, as well as making up legal titles to any subject, that the forms of the country where the proceedings are instituted, must be observed." Vatt. Law Nat. (Bk. 2, c. 7, § 85) says, "In the same manner the validity of a testament, as to its form, can only be decided by the judge of the domicil, whose sentence, delivered in form, ought to be everywhere acknowledged. But, without affecting the validity of the testament itself, the bequests contained in it may be disputed before the judge of the place where the effects are situated, because those effects can only be disposed of in conformity to the laws of the country;" (that is, as I understand it, agreeably to the forms of transfer required by those laws.)

In the case of Richards v. Dutch, 8 Mass. 515, although the court held that legatees of a foreign testator must resort to the courts of the testator's country for payment of their legacies, yet that the administrator here is bound to pay the debts of the testator; and that the defendant here might set off against the claim of the administrator any legal claims which they could establish as creditors of the estate of the deceased; but could not set off legacies. And in Dawes v. Boylston, 9 Mass. 355, 356, Mr. Justice Sewall, in delivering the opinion of the court, said, "The administration granted in this state has been justly styled ancillary in respect to the administration in the jurisdiction of the prerogative court. The defendant has an authority to collect, and to pay, debts, and is liable for the contracts and duties of the testator, recoverable, and which may be enforced within this jurisdiction; but is not liable to the court of probate upon any partial account to be there rendered and adjusted, to a decree either of payment or of distribution, whether for a legacy, or to any claiming by a supposed succession of the deceased's effects." And in the case of Selectmen of Boston v. Boylston, 4 Mass. 324, the same judge, in delivering the opinion of the court, says, "The administration granted to the respondent, with the will annexed, of Thomas Boylston, is to be considered not only as a means of collecting the effects of the testator within this jurisdiction, but of answering, according to the rules of the same jurisdiction, the demands of creditors, and all legal liens on those effects."

In Harvey v. Richards [Case No. 6,184], the counsel for the respondent, who was contending that the surplus should be remitted to the forum domicilii for distribution, says, "This state, influenced by the comity which exists between different countries upon this subject, invests the person pointed out by the original administrator, with authority to collect these effects; and in return for this indulgence, requires that the debts due to its own citizens shall be paid, (before these funds are withdrawn,) either ratably or fully according to the laws of that country." Mr. Webster, on the other side, said, "It is difficult to perceive the reason why debts are to be paid and legacies not paid, or the surplus not distributed. By the law of England, assets are to be marshalled, and judgments and bond debts are to be paid before debts by simple contract. If a simple contract creditor be found here, his debts having been contracted in India and with reference to the laws of that country, may be obtain satisfaction out of the funds here, and have judgment creditors and bond creditors unpaid in India? It would seem at least to be equitable, that debts contracted in India should be paid according to the laws of India, wherever the fund might be found. A general rule that all debts, asserted here, wherever contracted, should, in all cases, be paid out of the funds here, would seem to be as objectionable as the supposed rule that lega-

tees and next of kin, must in all cases resort to the forum of the domicil." In the same case, Mr. Justice Story, in delivering the opinion of the court, said, "That there ought to be no universal rule on the subject; but that every nation is bound to lend the aid of its own tribunals for the purpose of enforcing the rights of all persons having title to the fund, when such interference will not be productive of inconvenience or conflicting equities." And again he says, "I utterly deny that the administrator here cannot be compelled to account to any competent tribunal for all the assets which he has received under the authority of our laws." Again, he says, "Each of these administrations may be properly considered as a principal one with reference to the limits of its exclusive authority; and each might, under circumstances, be deemed an auxiliary administration." And again he says, "The administrator here is not a mere agent of the administrator abroad. He collects and receives the assets in his capacity as administrator generally; and so far as it may be wanted for payment of debts and legacies, he holds it in trust for the creditors and legatees, and, as to the residuum, for the next of kin." "Could the administrator abroad sue the administrator here to recover the assets collected here? I suppose not. The creditors, legatees, and heirs are the only persons competent to sue in respect of their own interests; and the administrator, as such, could have no remedy." And he says, "The administrator here is not the less administrator because he is not clothed with the same character abroad." "It is sufficient that he is the exclusive representative of the deceased, as to those assets."

In the case of Selectmen of Boston v. Boylston, 2 Mass. 388, it is said to be a rule of law well established, "that the rights of parties to property are governed by the lex loci, but the remedy, or form of recovery, by the law of the country where that remedy is sought, or where process is issued for its recovery." And in Pearsall v. Dwight, 2 Mass. 84, 89, which was an action in Massachusetts upon a note made in New York, Mr. Chief Justice Parsons, in delivering the opinion of the court, said, "The party claiming the benefit of this note, has sued it originally in a court of this state. The law of the state of New York will therefore be adopted by the court, in deciding on the nature, validity, and construction of this contract. This we are obliged to do by our own laws. So far the obligation of comity extends; but it extends no further. The form of the action, the course of judicial proceedings, and the time when the action may be commenced, must be directed exclusively by the law of this commonwealth. These are matters not relating to the validity of the contract; and to permit the laws of another state to control the court in its proceedings concerning them would intrench

upon the authority of our own laws unnecessarily, and for no principle of common utility. Cases may be supposed in which this permission might be injurious to our citizens." The chief justice had before said, in the same case, "It is a general rule, that personal contracts entered into and to be performed in any one state, and which are there valid, are to be considered as valid in every other state." "This rule is subject to two very important exceptions: First, that neither the state in whose court the contract is put in suit, nor its citizens may suffer any inconvenience by giving the contract effect; and, secondly, that the consideration of the contract be not immoral." Huberus, in his title De Conflictu Legum (volume 2, lib. 1), says, "Præscriptio et executio non pertinent ad valorem contractûs, sed ad tempus et modum actionis instituendæ, quæ, per se, quasi contractum, separatumque negotium, constitit; adeoque receptum est, optimâ ratione, ut in ordinandis judiciis, loci consuetudo ubi agitur, etsi de negotio alibi celebrato, spectetur." And, with regard to this principle of comity of nations, he says, "Rectores imperatorium id comiter agunt ut jura cujusque populi, intra terminos ejus exercita, teneant ubique suam vim, quatenus nihil potestati aut juri alterius imperantis, ejusque civium, præjudicetur. Verum tamen non ita præcise respiciendus est locus in quo contractus est initus, ut si partes alium, in contrahendo, locum respexerint, ille non potius sit considerandus. Nam, contraxisse unusquisque in eo loco intelligitur, ne quo ut solveret, se obligavit." Dig. 7, 21, 44. And again he says, "Effecta contractuum, certo loco initorum, pro jure loci illius alibi quoque observantur, si nullum inde civibus alienis creetur prejudicium in jure sibi quæsito;" In which case he says, "Magis est, in tali conflictu, ut jus nostrum, quam jus alienum, servemus." These passages are cited by Mr. Fonblanque with approbation in his note to the Treatise of Equity, Bk. 5, c. 1, § 6, vol. 2, p. 442. And Mr. Chief Justice Marshall, in delivering the opinion of the supreme court of the United States in the case of Harrison v. Sterry, 5 Cranch, [9 U. S.] 298, says, "The words of the acts which entitle the United States to a preference, do not restrain that privilege to contracts made within the United States, or with American citizens. To authorize this court to impose that limitation on them, there must be some principle in the nature of the case which requires it. The court can discern no such principle. The law of the place where a contract is made, is, generally speaking, the law of the contract; that is, it is the law by which the contract is expounded. But the right of priority forms no part of the contract itself. It is extrinsic; and is rather a personal privilege, dependent on the law of the place where the property lies, and where the court sits which is to decide the cause. In the familiar case of the administration

of the estate of a deceased person, the assets are always distributed according to the dignity of the debt as regulated by the law of the country where the representative of the deceased acts and from which he derives his powers; not by the law of the country where the contract was made." See, also, Fenwick v. Sears's Adm'r, 1 Cranch [5 U. S.] 259, and Dixon's Ex'rs v. Ramsay's Ex'rs, 3 Cranch [7 U. S.] 323, 324. So in the case of Lewis v. Fullerton, 1 Rand. (Va.) 23. The court of appeals in Virginia say, in regard to the lex loci contractus, "If, then, this contract, made in Ohio, had an eye to the state of Virginia for its operation and effect, the lex loci ceases to operate. In that case it must, to have its effect, conform to the laws of Virginia. It is insufficient under those laws to effectuate an emancipation, for want of due recording in the county court. It is also ineffectual, within the commonwealth of Virginia, for another reason. The lex loci is also to be taken subject to the exception that it is not to be enforced in another country when it violates some moral duty, or the policy of that country; or is inconsistent with a positive right secured to a third person or party by the laws of that country in which it is sought to be enforced. In such a case, we are told, magis jus nostrum quam jus alienum servemus. That third party, in this case, is the commonwealth of Virginia." So, also, in the case of Holmes v. Remsen, 4 Johns. Ch. 472, Chancellor Kent says, "The true question is whether it be not wise and politic, and just, where no positive law intervenes, and where it is not repugnant to the essential policy and institutions of the country, to adopt the rule of international law which other nations apply to us, and which impairs no right, but promotes general justice, and is founded on the mutual respect, comity, and convenience of commercial nations. Huber has placed this subject on proper grounds when, speaking of the effect of the law of the foreign domicil operating upon property in another jurisdiction, he says, 'Non vi legis immediatâ, sed accedente consensu potestatis summæ in alterâ civitate, quæ legibus alienis in loco suo exercitis, præbet effectum, sine suo, suorumque præjudicio, mutuæ populorum utilitatis respectu; quod est fundamentum hujus doctrinæ.' Lib. 1, Tit. 3, De Conflictu Legum, § 9." See, also, the case of DeSobry v. DeLaistre, 2 Har. & J. 224, to the same effect.

These authorities are perfectly satisfactory to show, that even if this were a question as to the construction of the original contract by the lex loci contractûs, the law of Virginia would not prevail in a conflict with the laws of this district, in a court of this district. But it is not a question as to the construction of the original contract. The right of priority forms no part of the contract, and could only arise in case the debtor should die insolvent, before payment of the debt. The contract itself does not provide for that case. The law of Virginia, which gives the priority, relates only to the remedy of the creditor in case such an event should happen, and could operate only upon such effects of the deceased, as should be found in that state. The law of that state, as such, cannot operate upon property out of its territory. If other states, in which the property of a citizen of Virginia may be found, permit the succession to go according to the law of Virginia, it is because it is part of the law of such states that the succession should be regulated as it would have been regulated by the law of Virginia if the property had been found there. But if the laws of those states should provide that the debts of the deceased shall be first paid out of the property, in a certain ratio, those laws must prevail, because all property, within the limits of a state, is subject to the laws of that state; and if a foreign law be permitted, in any manner to regulate the disposition of such property, it is because the state, in which the property is found, permits it as a matter of comity. This is expressly stated by Huberus, in a sentence next following one of those already cited, where he says, "Ex quo liquet hanc rem non ex simplici jure civili, sed ex commodis, et tacito populorum consensu, esse petendum."

Upon the first opening of this case the court had not the least doubt upon the point, and nothing but respect for the learned counsel who have raised the question, and the ingenuity of the argument founded upon what we suppose to be a misapprehension of the observations of a very learned judge, could have induced this court to give its reasons for the opinion it has formed upon what it deemed to be a well-settled point of law, namely, "That in the administration of the estate of a deceased person, the assets are," as stated by Chief Justice Marshall, in Harrison v. Sterry, 5 Cranch [9 U. S.] 298, "to be distributed according to the dignity of the debt as regulated by the law of the country where the representative of the deceased acts, and from which he derives his powers, not by the law of the country where the contract was made."

Judgment for the plaintiff on the case agreed.

UNION BANK OF LOUISIANA (BANK OF TENNESSEE v.). See Case No. 899.

UNION BUTTON-HOLE & EMBROIDERY CO. (SINGER SEWING MACH. CO. v.). See Case No. 12,904.

UNION CAR SPRING MANUF'G CO. (NATIONAL SPRING CO. v.). See Case No. 10,051.

UNION CITY (HOLLY v.). See Case No. 6,-624.