HON. JOSEPH R. LEWIS......................... do.    do.

JOSEPH H. HOUGHTON........................... CLERK.

WALLA WALLA COUNTY *vs.* ELISHA PING, *et al.*

An official bond with no penal sum named in it, but left in blank where the penalty should be inserted, is a nullity.

When the penal sum is not written in such bond, until after it has been signed and sealed by the sureties and passed from their control, for delivery, the sureties are not estopped from denying their liabilty, although the bond has been accepted without knowledge of the alteration.

Pleadings in the case criticised.

An alteration of an instrument under seal, after delivery has been consummated, avoids the instrument.

An alteration of a deed should be sanctioned by the same acts, as are required in the execution and delivery of the original instrument.

Alterations in a deed, after it has been signed and sealed, and placed beyond the control of the maker, for delivery, but before the same has been delivered, renders the deed void, as against the maker, unless he afterwards in due form assents to such delivery.

Alterations in a deed after the same has been executed, but before it has left the control of the grantor for delivery, do not avoid the deed, the grantor being estopped from denying its validity as altered.

Authorities to the effect that a sealed, like an unsealed instrument, may, until delivery, be altered by parol authority, reviewed, and shown to be a departure from the ancient and generally accepted current of the law.

A rule like that of *caveat emptor* applies in the case of one who accepts a sealed instrument—he must assure himself of its validity.

The leaning of the law being in favor of sureties their contracts are strictly construed.

Whether the people appoint a ministerial officer, or judicial tribunal agent, to accept an official bond, the quality and effect of the acceptance is the same, as in other cases.

339

Error to First Judicial District.

*N. T. Caton* for plaintiff in error.

*Kennedy, Sharpstein* and *Frank P. Dugan* for defendants in error.

Opinion by GREENE, Associate Justice.

The County of Walla Walla appears as plaintiff in the District Court of the First District, held at Walla Walla, and sues there certain persons upon a supposed County Treasurer's bond, alleged to have been made to the County by one of those persons, the county treasurer, as principal, and the others of of them as sureties. In the pleadings, the allegations of the country are by the sureties denied. The evidence on the trial is not before us, but we have the findings of fact of the judge of the District court in the nature of a special verdict.

These findings of fact are not made the subject of objection here. But the district court having proceeded upon them to give judgment for the sureties, the county complains to us, that judgment was erroneously given in their favor and ought to have been rendered against them.

The real question in this case seems to be, whether the defendants in error, named as sureties in this writing, executed and delivered it as their deed. *Prima facie,* they did. (*Grimm vs. School Directors,* etc., 51 Penn., 219.) For with their hands and seals at its foot, apparently attesting it to have been by them signed and sealed, here it is in the obligee's possession, by the obligee produced and sued.

The judge does not expressly find execution and delivery of the supposed bond, or the contrary. But he finds facts from which it can be determined whether there were execution and delivery.

His findings show, that the writing, existing when signed and sealed by the sureties, is not what at present appears. A very material change has come over it since then. The writing signed and sealed by them contained blanks. No penal sum was in it specified. It was a nullity. In one of the blanks, the penal sum of forty-five thousand dollars has been since

inserted; and the writing now appears on its face to be a perfect instrument.

Now, if this alteration has been succeeded by a delivery by the sureties, the law is well settled that the instrument sued must be considered their bond. So unquestionably settled, indeed, that it is idle to cite authorities. By delivery, they must have made, whatever they delivered as signed and sealed by them, their deed. They are estopped from saying they did not sign and seal whatever they may have delivered as signed and sealed by them. And the principal question is reduced to the inquiry, whether the alteration has been succeeded by a delivery by the sureties.

But here there is sought to be set up a different estoppel— an estoppel that shall prevent the sureties from denying as well delivery as signing and sealing. It is argued that, as this writing has come into the hands of an innocent party, in an apparently perfect state, and attested under the sureties' hands and seals, and on the faith of it the Treasurer has been suffered to assume the responsibilities of his office, the sureties are estopped from denying their liability. Two cases are cited as sustaining this view. *Cutter vs. Whittemore*, 10 Mass., 442; *Adams vs. Bean*, 12 Mass., 137.

In *Cutter vs. Whittemore*, two persons had signed an arbitration bond drawn to be signed by themselves and another, conditioned that that other should perform the award, and delivered the bond unconditionally as their own, and it was held their bond, though the third person had not executed. Very different is the case at bar. Here delivery by the sureties is put in issue. There the pleading of defendants admitted delivery. The jury, in *Adams vs. Bean*, found that an endorsing guarantor of a lease intended to deliver his guaranty, whether the lease was executed by one or by two lessees; and the court held him estopped by his delivery from claiming that he did not intend to be bound unless both signed.

Nothing appears, in either of these Massachusetts cases, tending to support such an estoppel as is argued by the plaintiff in error. The case of *State vs. Peck* (53 Maine, 284), cited by

him with another view, is much more to the purpose. In that, it is held, that sureties on a State Treasurer's bond, by having suffered the instrument to be attested as delivered, and by the bond having come into the custody of the State without notice of defect, were estopped from alleging conditional delivery. This Maine case gives a weight to attestation of delivery, and requires a surveillance over sealed instruments by their makers, unasserted by any Court elsewhere or by any writer upon law. Its parallel is only to be found in another case, cited by plaintiff in error from the same state (*The Inhabitants, etc., vs. Huntress*, 53 Maine, 90), wherein it is held that a party, by executing a Collector's bond with a blank in it for penal sum, impliedly agrees that the blank may be filled after execution; that a bond in this respect is to be compared to negotiable paper; that practically there is no real distinction in this matter between bonds and simple contracts; and that a penalty in a conditioned bond is "almost" matter of form. The Supreme Court of Maine in these cases, not only throw down the wall between sealed and unsealed instruments, but they transplant into the law of conveyancing an exotic principle, which hitherto has flourished but in a single field of the law merchant. (*Chauncey vs. Arnold*, 24 N. Y., 333, 335; *Hibblewhite vs. M'Morine*, 6 M. and W., 200, 216.) We hesitate to follow their example, lest in so doing we usurp the office of the Legislature, and mutiny against the common law which is the rule of our decision. (Civil Practice Act, 1869, Sec. 1). No such estoppel as is claimed exists at common law. (*People vs. Brown*, 2 Doug., 9, 14.) Not existing, it, of course, cannot be pleaded, and properly it was adjudged demurrable in plaintiff's reply below.

The points of plaintiff to show delivery come from him with questionable grace. It might have been argued, and perhaps successfully, that the complaint does not contain facts sufficient to constitute a cause of action. It does not directly aver, that defendants bound themselves by their writing obligagatory. It fails in *any* way to aver delivery, unless by saying that the bond was "made," "approved and filed." But, assuming the pleading good, delivery is to be determined from all the facts. 3 Wash. R. P., Chap. 4, Sec. 2, c. 28, 29.

For the clear enunciation of the law applicable to the case at bar, it is convenient to divide into three classes all cases of materially altered instruments claimed to be deeds, premising that we, with the concurrence of all the authorities except the Court of Maine, consider the penal sum in a bond, whether the bond be conditioned or unconditioned, as of the very substance of the instrument.

1.   Cases of alteration after delivery consummate.   Everywhere that deeds as deeds exist, the alteration in such cases avoids the deed, unless there is a redelivery accepted.   (*Penny vs. Corwithe*, 18 Johns., 499; *Zouch vs. Clay*, 2 Lev., 35; *Wooley vs. Constandt*, 4 Johns., 54; *Boston vs. Benson*, 12 Cushing, 61, 63.)   And the alteration or redelivery cannot be well made by parol authority.   (*Ex parte Decker*, 6 Cow., 59; *McKee vs. Hicks*, 2 Dever., 380; and cases cited under the two classes *infra*;) and, of course, not by authority implied from delivery.   (*U. S. vs. Nelson, et al.*, 2 Brock., 64, and cases cited under two following classes.)   Alteration by the covenantor is equivalent to a redelivery by him, and estops him from denying the delivery of the altered instrument and a property vested by deed cannot be divested by alteration, provided the property does not need a deed to maintain it in existence (*Lewis vs. Payne*, 8 Cow., 71); but these familiar principles, rightly viewed, make no exceptions to the rule.   And the received and reasonable opinion seems to be, that, in case of redelivery, both the redeliverer and acceptor are estopped from setting up the original deed, or the estate or rights it passed, as against the deed as redelivered and the estate or rights intended by the redelivery.

We will not go into a further criticism or a distribution of this class of cases, interesting as it might be to do so, because the case at bar, evidently to our minds, does not fall among them.   And yet, as the position might be taken, that, on the principle that what a party has authority to do it can adopt if already done by another, this instrument may be considered as if delivered with blanks to the County Commissioners, and as if filled up by them the penal sum they finding in it accept, with

it has seemed to us proper to indicate our opinion of the law in that aspect. This instrument, if considered as altered after delivery consummate, is void for want of redelivery.

2. Cases of alteration, before delivery has become complete by acceptance, but after the writing has been signed and sealed and after the maker has, in order to deliver, put it out of his custody and control. In this class of cases, as in the last, the alteration avoids the instrument, unless the maker subsequently assents to a complete delivery as altered, (*O'Neal vs. Long,* 4 Cranch, 78; *People vs. Brown,* 2 Doug., 9) and such assent, if given in due form, estops the maker from afterwards denying the altered instrument to be his deed.

If it be assumed, that the supposed bond in this case belongs to this class, then the writing as executed by the sureties, the writing as signed and sealed by them, and with its blanks unfilled, was the instrument they put out of their hands with intent to deliver. No other writing did they sign, seal or transfer. What they intended to have in it and to deliver must be presumed to have been what was in it at the inception of delivery. They cannot be presumed to have intended to bind themselves further than was written. They cannot by parol evidence be proved to have intended to bind themselves further. For, that would be to vary a written contract by parol. The writing, as signed, sealed and inchoately delivered, must be concluded to be all that they intended to allow to be completely delivered; and the filling in of blanks, to which the judge's findings show, they, subsequently to the first step towards delivery, gave no assent whatever, must be held, as in other cases of this class to avoid the instrument.

3. Cases of alteration after the maker of the instrument has completely executed it, but before he, in order to deliver, has put it out of his custody or control. In these cases, it has generally and very sensibly been held, that by subsequent delivery, the maker ratified the instrument as altered, and estopped himself from denying its validity. And the important question always is: Has he authorized the delivery as altered, or has he not?

It seems to us, that under some possible subdivision of this third class of cases, the case at bar must fall. The delivery, to an agent or co-obligor, of an intended bond, with the writing incomplete—so incomplete in this case as to be a nullity—and with the understanding, as the facts found show, that the instrument in its executed form is useless, and that it will need to be perfected before it will be acceptable, ought not to be construed the true technical delivery in any sense or to any intent. (*Owen vs. Perry*, 25 Iowa, 412, 423; *Hudson vs. Revett*, 5 Bing., 368; 3 *Wash. R. P.*, Chap. 4, Sec. 2, c. 24, 29, cases cited n. 4, 41, n. 5.) It is not enough to constitute delivery that a bond has been "signed and sealed, and put out of the possession of the signer." (*Chase vs. Breed*, 5 Gray, 440, 442.) A delivery is properly the last and consummating act on the part of the grantor or obligor.

A party is naturally supposed to put his contract into the shape in which he wants it to stand and in which he thinks it acceptable, before he dismisses it by his latest irrevocable act. Upon this idea, it is, that the first two great classes of cases proceed. The complementary idea is, that a party is not to be intended to have parted with the custody and control of his writing so long as he knows that it is incomplete or incapable of being acceptably delivered, and so long as it remains in the hands of an agent or co-obligor. And, upon this latter idea, the cases of the third class seem, though upon it they are not always announced, to proceed.

A writing is the maker's, till delivered. So long as the maker does not put it from him for another's use, it is his own to do with it as he pleases; to add, erase, substitute. What he can do concerning it, by himself, he can do by another. Just here, logically, start two sets of authorities, respecting this third class of cases, both having some legal reason on their sides. One maintaining that, as it is universally admitted that a power to make a sealed instrument must be under seal, so a power to make a sealed instrument speak differently, which is equivalent to making a different sealed instrument, must be under seal. The other may be said to assert, that, as it is uni-

versally admitted that a writing is no deed until delivered, is not till then effective as a sealed instrument, it is to all intents and purposes, till then, nothing but a writing, and capable, like any undelivered simple contract writing, of being changed by parol authority.

The latter line of authorities sprang from the English case of *Texira vs. Evans,* (cited 1 Anstruther, 228) in Lord Mansfield's day, a case which has since, on better consideration, by English judges, been solemnly denied to be good common law. (*Hibblewhite vs. M'Morine,* 6 M. and W., 200; *Davidson vs. Cooper,* 2 M. and W., 778, 793). But the parol heresy, which it proclaimed, has found followers in the State Courts of Pennsylvania (10 S. and R., 170; 6 *Id.*, 307; 18 *Id.*, 438; 2 Penn., 132); Alabama (1 Stewart, 517); New York (4 Johns., 54, 60; 8 Cow., 118); Maine, (53 Maine, 90, 284); Iowa (31 Iowa, 272, but see 19 With., 273, 297,) and perhaps in Kentucky (2 Ben. M., 310); New Jersey (2 Green, 583, 585); New Hampshire (13 N. H., 385,) and in South Carolina (4 M'Cord, 239.) In only four of these states, however, Pennsylvania, Alabama, New York and Maine, can the doctrine be said to have been distinctly adopted after full examination.

The former line of authorities has, so long as sealed instruments are to exist as such, the better reason, and conveys the more ancient and more generally accepted current of the law. The better reason, because that which differentiates and exalts a deed above all other contracts is not the delivery, but the sealing, and therefore the sealing, and not the delivery, should be the date from which a greater sanctity should hedge it round. The better law, also, as the cases we cite, to which many others might be added, fully show. *Hibblewhite vs. M'Morine,* 6 M. and W., 200; *People vs. Organ,* 27 Ills., 27; *Graham vs. Holt,* 3 Iredell, 300; *Burns vs. Lynde,* 6 Allen, 305.

We feel obliged to judge the case before us, by what we deem to be sound common law. And as the findings of fact show that this bond was altered, and delivered as altered, in the absence of the sureties, without authority from under seal, we must adjudge it not their bond. A rule like that of *caveat*

*emptor* applies to the delivery of a bond. The one who takes it must assure himself of its goodness. And, though the law respecting alterations may in some cases work hardship, yet "it is highly useful that a class of instruments should exist, to which persons may resort with a feeling of confidence that they shall not be binding till they are formally executed, and that when thus executed they shall not be liable to be varied or controlled by parol evidence." (6 Allen, 312.) Occasional convenience from leaving blanks to be filled, might be poor compensation for the evils to follow a departure from the common law. *Ib.*

But, did we feel at liberty to apply the laxer doctrine of *Texira vs. Evans* to this case, we would still have to affirm the judgment of the Court below; for almost the whole weight of authorities reject a sealed writing, altered without express power. *Famulencr vs. Anderson,* 15 Ohio, (State) 473; *Owen vs. Perry,* 25 Iowa, 412, 423; *Bell vs. Quick,* 1 Green, 312; *People vs. Brown,* 2 Doug., 9; *O'Neal vs. Brown,* 4 Cranch, 28; *Reese vs. U. S.,* 9 Wall., 13; *U. S. vs. Linn, et al.,* 1 How., 104; and cases cited *supra. Contra,* 53 Me., 90, 284, and see 8 B. Mon., 3 Grant, 61.

We have not felt it necessary to apply to this case that leaning of the law in favor of sureties, which construes their contract strictly and has been called to our attention by defendants in error, though were this a case of doubt we might so do. (9 Wh., 680; 9 Wall., 13; Theobald on Prin. and Surety, 147.) We are clear under the law applicable to deeds in general, that defendants in error did not deliver this altered writing as their bond.

It has been contended, from a supposed analogy between our boards of county commissioners and the county courts of Virginia, that the record of approval by the county commissioners is a fact in the absence of fraud conclusive of delivery. (*Vaughn vs. Commonwealth,* 17 Grattin, 386; *ib.* 391.) But we cannot see that acceptance by the public should conclude to a supposed obligor, any more than acceptance by an individual would. The record of approval is a written acceptance. That is all. It concludes nobody, but the party who makes it. Whether

the people appoint a ministerial officer, or a judicial tribunal, their agent to accept, it alters not the quality or effect of the acceptance. (See *Wright vs. Leath*, 24 Texas, 24.) The county commissioners are not even a judicial tribunal.

Let the judgment of the court below be affirmed.