OWEN v. PERRY *et al.*

Conveyance: AGENT: FILLING OF BLANK DEED. Where a person owning land, and desiring to sell the same, sends to an agent a deed therefor signed by the grantor, with the name of the grantee and the amount of the consideration left blank, with instructions, in an accompanying letter, for the agent to negotiate a sale and deliver the deed to the purchaser, the agent will, so far as third persons without knowledge of the circumstances are concerned, be regarded as having power to fill such blanks, and the deed will be held valid.

*Appeal from Dubuque District Court.*

THURSDAY, JULY 23.

IN 1860, plaintiff was the owner of the two hundred acres of land in dispute, and is still such owner, unless the title has been divested by the deed or judicial proceedings upon which defendants rely, and to which full reference is made in the opinion. The petition was filed in October, 1865; after various amendments; the cause was brought to issue, referred; the referee reported in favor of the prayer of the bill, allowing plaintiff to redeem and setting aside defendants' title. This report was confirmed, and defendants appeal.

*Mills & Graham* for the appellants.

I. The additions to the deed, to wit, the filling in of the blanks, was done by authority of the plaintiff. If blank spaces are left to be filled up after execution, the consent

of the party executing, that they shall be filled afterward, is to be implied. *Smith* v. *Crocker*, 5 Mass. 538; *Warring* v. *Smyth*, 2 Barb. Ch. 123; *Wiley* v. *Moon*, 17 Serg. & Rawle, 438; *Duncan* v. *Hodges*, 4 McCord, 239; *Jordan* v. *Neilson*, 2 Wash. 164; *Boardman* v. *Gore*, 1 Stew. 517; *Bank* v. *Curry*, 2 Dana, 142; *Cleaton* v. *Chambless*, 6 Rand. 86; *Pagot* v. *Pagot*, 2 Ch. Rep. 187; *Markham* v. *Gonaston*, Moor, 547. Plaintiff was his own scrivener in drawing up this deed. Why did he leave these blanks unless he intended E. M. Bartholow to fill them up? If Owen intended to give E. M. Bartholow power to sell only, why did he send this deed at all? Bartholow did not need that instrument to enable him to sell. Plaintiff had already conferred that power on him in the fall of 1860.

II. The best way to construe the letter of plaintiff referred to is to examine it in the light of plaintiff's testimony and plaintiff's acts.

Putting his letter, his testimony, and his deed together, it is plain that plaintiff intended that E. M. Bartholow should sell the land, fill up the blanks in the deed, deliver it to the purchaser, receive the purchase money and remit to plaintiff in drafts on New York, New Orleans or Memphis. Bartholow asked for a power of attorney to enable him to sell and convey the land. Plaintiff sent, instead, this deed " in anticipation of a sale," and intending that it should have the effect of a power of attorney, and be even better than a power of attorney. More than this, he intended that the anticipated purchaser should think it better than a deed made under a power of attorney. If plaintiff had sent the power of attorney asked for, and E. M. Bartholow had under it conveyed to his son without consideration, and J. Newton Bartholow had afterward conveyed to Perry, and Perry to Roberts, under the same circumstances developed in this case, could he

now repudiate his acts? This would not be contended for a moment. He would be estopped from denying it to be his deed; and so in this case, on the soundest principles of equity, honesty and morality, is he estopped from denying the deed to J. Newton Bartholow to be his deed.

III. That E. M. Bartholow had only power to sell conferred on him by this letter, and that he had no authority to receive the money or any thing else, as contended by counsel, is an afterthought of counsel. Plaintiff tied up his agent by no such limitation as his counsel would pretend. If he had no discretion to sell for less than $2,500, why did not plaintiff insert $2,500 in the deed? If he did not mean that he should fill the blanks, why send a deed executed in blank? If he did not mean that Bartholow should receive the consideration and deliver the deed, why was he intrusted with the deed at all? The answer is that plaintiff intrusted to Bartholow's discretion all these matters.

IV. That a deed executed in blank and filled up afterward by parol authority is not void absolutely is shown conclusively, we think, by the authorities we have quoted in our brief; but as plaintiff's counsel contend the contrary, we will examine some of the cases cited by them.

The case of *Drury* v. *Foster* (2 Wall. 24), a case similar to this so far as the execution of the instrument is concerned, held a deed of the wife's lands invalid, on the ground that by the laws of Minnesota she could not convey her lands by procuration, not even by power of attorney, much less by verbal authority to fill up a blank, but the court give it as their opinion, that, had the lands belonged to the husband, the deed would have been good.

In *Waring* v. *Smyth* (2 Barb. Ch. 119), the note and mortgage were fraudulently altered in a material part after delivery — not a case where a blank was filled by parol authority.

*Basford* v. *Pearson* (9 Allen, 387) is a case where an action was brought upon the covenants in the deed, in which the name of the grantee was left blank, and the covenants altered in a material point after execution.

*Sims* v. *Hervey*, 19 Iowa, 273. In this case the property was the individual property of the wife, Mrs. Hervey. She signed wholly in blank. She was not present when the paper was filled up; it was filled up by her husband, Mr. Hervey, in her absence, and without her authority, with description of the property, and there is no finding or evidence that she authorized verbally or otherwise this to be done. It was filled up with the name of the grantee, by Smith or under his order, when in Nebraska; and Smith does not pretend that he had any authority, verbal or otherwise, from Mrs. Hervey to do so. On the contrary, he swears that he supposed the property was Mr. Hervey's, and that he acted in filling the blanks under the husband's verbal authority and instructions.

V. Seals have been abolished in this State. True, as stated in that case by the court, other of the common law requisites of a conveyance of land, are not thereby abrogated. There must still be a grantor, a grantee, and a thing to be granted. But that is true also of every other thing that is susceptible of sale or transfer between men in the course of business. In a promissory note there must be a payor, payee, and a thing to be paid — a promisor, promisee, and a thing to be promised. And so in all kinds of contracts. The point we desire to make is this: that, sealing having been abolished, the deed partakes more of the character of a simple contract in writing, and that a letter giving authority to sell and fill blanks as in this case, is of equal authority to the deed itself, and would have the same legal force and effect here as a deed executed under seal would have where power and authority is given in writing under seal to fill blanks

would have where the common law prevails. *Bridgeport Bank* v. *R. R. Co.*, 30 Conn. 231; *Kortwright* v. *Commercial Bank of Buffalo*, 20 Wend. 91; *Fatman* v. *Lobach*, 1 Duer, 356, 361; Redf. on Railw. 35; *Hobblewhite* v. *McMorine*, 6 Mees. & Wels. 208, and notes in American edition; *Mitchell* v. *Culver*, 7 Cowen, 336; *Boyd* v. *Brotherson*, 10 Wend. 93; *United States* v. *Nelson*, 2 Brock. C. C. 64; *Leavitt* v. *Fisher*, 4 Duer, 1; *Drury* v. *Foster*, 2 Wal. 24.

VI. From the authorities we contend, that, whatever might have been the effect of this deed as between the plaintiff and James Newton Bartholow, which we do not stop to inquire, yet, as between the plaintiff and an innocent purchaser, plaintiff is estopped from repudiating his own acts. Chief Justice PARKER, in *Somes* v. *Brewer*, 2 Pick. 183, says: "It is a general and just rule, that where a loss has happened which must fall on one of two innocent persons, it shall be borne by him who is the occasion of the loss, even without any positive fault committed by himself, but more especially if there has been any carelessness on his part which contributed to the misfortune."

The plaintiff cannot succeed in this case without completely demolishing this most just and equitable principle, for he himself placed Bartholow in a position which enabled him to commit this fraud. *Bank of U. S.* v. *Davis*, 2 Hill, 465. See also, *Thomson* v. *Blanchard*, 4 Cowen, 303, 309; *Gregg* v. *Wells*, 10 Ad. & El. 90; *Converse* v. *Mutual Ins. Co.*, 1 Comst. 290; *Munn* v. *Commission Co.*, 15 Johns. 44; *Williams* v. *Mitchell*, 17 Mass. 98; *Foster* v. *Essex Bank*, 496.

VII. It does not conclusively appear that Adams & Robinson examined the deed at all while making search for Roberts. The knowledge which they acquired while making search for Allen was not notice to Roberts. It

was not acquired in the same transaction, and the only notice with which Roberts can be charged is that brought home to Adams & Robinson while making search for him. Willard's Eq. 250, 609; 2 Hill, 463, 465. Not only had Roberts no actual notice, but his attorneys had no knowledge of any fact sufficient to put them upon inquiry. In the case of *Jones* v. *Bamford*, 21 Iowa, 217, the attorney had notice of the fact and turned away from inquiry.

*Monroe & Deery* for the appellee.

On the part of the plaintiff, we claim :

1. That no title passed from plaintiff by reason of the proceedings in the foreclosure suit of *Fisher* v. *Burns*, because he was not made a party to said suit.

2. That no title passed from him by the proceedings and decree in the foreclosure suit of John D. Perry against him, because the court acquired no jurisdiction in said cause, for want of service of notice, said E. M. Bartholow having no authority to accept service, and the case having been discontinued by the failure to file the petition by the day named in the notice. First, as to the question of acceptance by attorney to give the court jurisdiction: *Harshy* v. *Blackmarr*. 20 Iowa, 161, and especially 183, 184, 185; *Prince* v. *Griffin*, 16 id. 552, 554. Second, as to the failure to file petition by day named, a discontinuance: Code of 1851, p. 252, § 1716; *McCaffree* v. *Guesford*, 1 Iowa, 81; Rev. 1860, p. 498, § 2813; *Hudson* v. *Blanfus*, 22 Iowa, 323.

3. That the paper filed and altered by E. M. Bartholow in the fall of 1864, was not the deed of Wm. F. Owen and wife, and passed no title from him to the grantee named therein because not a deed until completed. First, because no such authority could be given by parol or any other instrument of less dignity than the deed itself, no

knowledge of such filling up, no subsequent ratification and no receipt of the money; second, because the deed was not filled up in pursuance of any authority from Wm. F. Owen, either written or oral, but in disregard of the only authority ever given, and after the authority to sell, given in the spring of 1851, had ceased; third, because altered in a material part, after it passed from the possession of Wm. F. Owen, without his knowledge or consent, or subsequent ratification, and therefore null and void.

Authorities as to the validity of deed, filled up after execution, as to blanks : *Sims* v. *Harvey*, 19 Iowa, 273 ; *People* v. *Organ et al.* 27 Ill. 27 ; *Chase* v. *Palmer*, 29 id. 306 ; *Bradford* v. *Pearson*, 9 Allen ; *Burns and wife* v. *Synde*, 6 Allen 305 ; 4 Kent, 509, note 1 ; *Waring* v. *Smith*, 2 Barb. 119 ; 2 Washburne on Real Property, 576, 577 ; 2 Hilliard on real Estate, 442, 443, §§ 53, 54 ; *Jones* v. *Ireland*, 4 Iowa, 63 ; 1 Greenlf. on Ev. §§ 564, 565, 566, 568, and in note.

As to question of alteration to make a deed void : See 4 Kent, 500, note 1 ; *Waring* v. *Smith*, 2 Barb. 119 ; Washburne on Real Property, vol. 2, 576, 577 ; Hilliard on Real Estate, 442, 444, §§ 53, 54 ; *Jones* v *Ireland*, 4 Iowa, 63 ; Greenlf. on Ev. §§ 564, 565, 566, 568, and in note.

When a deed has been delivered as an escrow, it has no effect as a deed, until the condition has been performed, and no estate passes until the second delivery, though, when such second delivery has been made, it relates back to the first, for many purposes, and is considered as a consummation of an inchoate act then begun. But if, in the mean time, the estate should be levied upon by a creditor of the grantor, he would hold by virtue of such levy, in preference to the grantee in the deed. Nor does such second delivery carry a right to the

intermediate rents accruing between the first and second delivery. If the deed is delivered before the previous condition is performed, it will not be the deed of the grontor, or have any effect as such. *Jackson* v. *Rowland*, 6 Wend. 666; *Frost* v. *Beekman*, 1 Johns. 297; *Jackson* v. *Catlin*, 2 id. 248; Perkins, § 10; 3 Prest. Abst. 65; Perkins, § 138; but see id. § 144; *Stiles* v. *Brown*, 16 Verm. 563, 569; *Jackson* v. *Sheldon*, 22 Me. 569; see *Hooper* v. *Ramsbottom*, 6 Taunt. 12; *State Bank* v. *Evans*, 3 Green, 155; *Rhodes* v. *Gardiner*, 30 Me. 110; unless the grantee holding it convey the land to a *bona fide* purchaser, ignorant of the fact as to the delivery; *Blight* v. *Schenck*, 10 Penn. 205; *Peter* v. *Wright*, 6 Ind. 183; *Souverbye* v. *Arden*, 1 Johns. 240; *Everts* v. *Agnes*, 4 Wis. 443; *S. C.*, id. 453; *Black* v. *Shreve*, 13 N. J. 458; *Cincin. Wil. & Z. R. R.* v. *Iliff*, 13 Ohio, 240, 254; *Southern L. Ins. Co.* v. *Cole*, 4 Fla. 359; Com. Dig. Fait. A. 4; *Hinman* v. *Booth*, 21 Wend. 267; *Fairbanks* v. *Metcalf*, 8 Mass. 230, 238; Shep. Touch. (Prest. ed.) 59; *Green* v. *Putnam*, 1 Barb. 500, 504; 1 Wood Conv. 197; *Ruggles* v. *Lawson*, 13 Johns. 285; *Butler & Baker's case*, 3 Rep. 35; *Shirley* v. *Ayres*, 14 Ohio, 307.

We claim, that neither John D. Perry nor David Roberts could take title through James Newton Bartholow, because the deed to him was void, and a void deed could give title to no one. Recording gives no validity to a void deed. *Gardner* v. *Cole*, 21 Iowa, 205, 214, 215, 216.

That it is wholly immaterial whether they were innocent purchasers or not. But they were not innocent purchasers, and had sufficient notice to put them on inquiry. Authorities: Ham. Dig. 279, § 88; *Lyman* v. *Cessford*, 15 Iowa, 234.

As to failure to record when evidence of fraud, Ham. Dig. 261, § 113; see also 2 Kent in notes 8, 20, 24, 189.

Notice to attorney, notice to principal. 2 Kent's Com. 818, in note; Story on Agency, § 140; *Jones* v. *Bamford*, 21 Iowa, 217.

WRIGHT, J. — David Roberts is the defendant more immediately and largely interested, and his title is this:

First, a deed from plaintiff to J. N. Bartholow, of date March 16, 1861, expressed consideration $2,100, and filed for record October 21, 1864; next, a deed from said Bartholow to John D. Perry; consideration named $2,500, October 10, 1864, and filed for record 21st of the same month. This is followed by a deed from Perry to Roberts; consideration $3,210, date January 3, 1865, date of record not shown.

Second, a mortgage made by Burns (through whom plaintiff derives title), to Fisher, June 8, 1857, to secure $1,000. Plaintiff took title from Langworthy in 1858. This mortgage was foreclosed in August, 1861. Burns was the only party defendant. Amount of judgment $558.75, with interest and costs. September 28, 1861, the property was sold thereunder to John D. Perry for $641.10, and he took sheriff's deed accordingly.

On the 24th of June, 1862, Perry commenced his proceeding in equity against said Owen, setting forth the mortgage aforesaid, the foreclosure and his purchase, that Owen held the legal title, and asking that he be decreed to redeem from said sale by a day to be fixed, and in default that his equity be barred.

An original notice was issued in due form, and service thereof accepted by "E. M. Bartholow, attorney for Wm. F. Owen." The case was referred. The referee reports, that plaintiff appeared before him by his attorneys, * * and "defendant by his attorney, E. M. Bartholow," and, based upon certain agreements and admissions, he found that Owen was entitled to redeem upon paying $605.45,

with costs, and that, to entitle him to do so, he should pay that amount, with interest, in sixty days from that date, to wit, February 4, 1862. This report was heard two days thereafter, in all respects confirmed, the equity of said Owen being declared barred unless he should pay the amount named within the time above stated. After this, as before shown, Perry took title from J. N. Bartholow, and conveyed to defendant Roberts.

Plaintiff denies the validity of the deed from himself to J. N. Bartholow. He further claims, that the proceedings by which Perry sought to foreclose his equity do not conclude him for the reason that he was not served; that he made no appearance in person; that E. M. Bartholow was not his attorney, and had no power to bind him. In this connection, it may be stated, that, when the order of reference was made, there was no appearance for Owen; but, though called, he made default. There are other objections urged by plaintiff to that proceeding, which, however, need not now be further stated.

It is manifest, that, if defendant's title can be sustained upon either ground stated, plaintiff's action must fail. CONVEYANCE: It is equally clear, that one of these parties agent: filling of blank deed. must suffer a loss. Plaintiff never received any consideration for the alleged conveyance to J. N. Bartholow, and probably never will. Roberts paid the full amount named in his deed, $3,210, in money, to Perry, immediately took possession, and has used and occupied the premises ever since. Having said this much to show the attitude of the parties, we turn first to the objections made to defendant's title, derived through the Bartholow deed.

Plaintiff was a non-resident of the State (and so continued), and constituted E. M. Bartholow his agent to take charge of and collect the rents on this place. In the fall of 1860 he wrote to this agent to sell the land,

who replied, asking him to send a power of attorney. Instead of doing this he forwarded a deed, duly signed and acknowledged, with the name of the vendee and amount of consideration left blank. This deed also referred to the Burns mortgage, leaving blanks for the names of mortgagor and mortgagee in part, its original amount and the amount still unpaid; which mortgage, by the terms of the deed, was recognized as an incumbrance, and to be paid by the purchaser. This deed was accompanied by a letter, in which plaintiff says he incloses deed with title papers; that if the agent can possibly sell so that he can realize $2,500 cash in New York, etc., not to fail; that he would be unwilling to trade for other property; that he doubts not a trade, to which the agent had probably referred in some other letter (not disclosed), would be profitable; he hopes he will make the arrangement spoken of and get the city property himself; if he made $5,000 for himself out of the trade he should only be the better pleased; that if he could get the $2,500, for which he was willing to sell, by the 20th of April, he could make an arrangement by which he would not be a loser. If he made the trade he was directed to telegraph, as he desired to secure a piece of property where he resided which was to be sold about the 1st of May. In May (16th), 1861, Bartholow wrote him that he had not sold; that he was making every effort, etc. In July he wrote of an offer of $2,500 in full paid bank stock, subject to the incumbrance. This offer was by Perry, who, it appears, is a relative of Bartholow. In June, 1861, plaintiff gave to one Cropper an order for this deed, or for the money if the land had been sold.

In May, 1862, Bartholow wrote to Cropper, advising him that the mortgage (of which he says he had before advised him), had been foreclosed, and the land sold; that he still held the deed, and that it was, how-

ever, of no validity; and that he advised a friend of his to buy the land under the mortgage sale, with whom he believed Mr. Owen could make a reasonable arrangement. Cropper died in 1864, and plaintiff never heard from him after giving the order in 1861.

Bartholow, when he delivered the deed to his son, in 1864, filled up the blanks with the name of the grantee; the consideration, $2,100; the given name of the mortgagor; the full name of the mortgagee; the amount thereof, $1,000; the amount paid thereon, $600. He also took, probably at the same time, from the grantee, an obligation to convey 320 acres of land to plaintiff, when requested, in consideration of this conveyance; but the value of these lands is not shown, nor has the instrument either date or stamp.

The objections to the deed are, that it passed no title until completed; that there was no authority to complete it; that such authority could not be given by parol, nor otherwise than by an instrument of equal dignity with the deed; that the blanks were not filled pursuant to any authority, either written or verbal, but in disregard of all authority; after the authority to sell had ceased; and because changed in a material part, after it had passed from the possession of plaintiff, and without his knowledge; that the deed was, therefore, void, and neither Perry nor Roberts could take title under it; that they could not be innocent purchasers; and then it is further claimed, that the testimony shows that they had notice, if not of all of the facts, at least sufficient to put them upon inquiry.

This is not a case where the instrument was wholly written over the grantor's name. Nor do the questions made arise between the parties to the instrument. Nor yet again was this deed deposited as an escrow with Bartholow to be delivered to a particular person upon the happening of a contingency. Nor, in our opinion, need

we enter upon the mooted question whether power to fill a material blank in an instrument affecting or conveying real property, may or may not be conferred by parol. The authorities, upon this point, are known to be conflicting, and possibly, even as to a party occupying the position of defendant Roberts (treating him as otherwise a *bona fide* purchaser), this court might not be united.

For myself, I confess, notwithstanding the opinion of the chief justice (*Simms* v. *Hervey*, 19 Iowa, 297), "that the practical instincts and business experience and sense of our people" are in favor of the validity of a deed thus filled up in accordance with a parol authority. There is no more reason, under our statute, which does not require the deed to be sealed, nor to be acknowledged as between the parties, why one should not be as much bound by his deed when executed in blank and filled up according to his directions, as by a blank acceptance or indorsement of a note or bill. 1 Redf. Rail. 124. But, however this may be, there should and can be no reasonable doubt as to its validity, as to third persons, who have no knowledge of the circumstances, when it is sent to an agent, with instructions *in writing* to negotiate the sale and deliver the deed to the purchaser. If an alteration, then it is to be taken as done by the consent of the party previously given. There is no doubt but that the party might be bound by his consent afterward given. And if there was power to sign and acknowledge the deed, — the same being delivered to the agent in blank, with authority in writing, express or implied, to fill up the blank, and thus perfect the conveyance, — its validity thus far could not well be controverted. *Drury* v. *Foster*, 2 Wal. 24. The contract or deed, when the blank has been filled, expresses the exact agreement of the parties, and nothing but an extremely technical view can

justify the holding that it is void, or in the absence of fraud even voidable. *Bridgeport Bank* v. *N. Y. & N. H. R. R. Co.*, 30 Conn. 231.

If the authority was in writing in this case, we do not understand appellee to insist that the blanks might not be filled. But this is denied, it being also claimed that the authority was not followed, if in writing. To our minds it is but too clear that it was the intention of plaintiff to have the deed and accompanying letter take the place of a power of attorney. That he then had unbounded confidence in his agent there can be no doubt, and that he intended that this deed should be filled up by the agent, and delivered to whoever might be the purchaser, is beyond all question; and that this intention continued even when he gave the order to Cropper, is plain enough, for Cropper executed to him a receipt showing that, if he obtained the deed, he was to use it in the same way, if he could make a sale. This order, by the way, Cropper never delivered, nor is there evidence that Bartholow knew of its existence.

Now, if the title was in the son, or even in Perry, we should be much inclined to grant the prayer of this bill. We think there are circumstances sufficient to justify a court of equity in concluding that the Bartholows, father and son, and their relative, Perry, conspired to defraud plaintiff and deprive him of his property. But this, as to Perry at least, more upon the ground of fraud, than any want of power in the elder Bartholow to fill up and deliver the deed. As to Roberts, however, there is not in the record the slightest evidence of a fraudulent purpose. He knew what the record disclosed, and no more. He knew nothing of the order to Cropper, of Bartholow's letters, of the circumstances under which young Bartholow obtained his title. If he had read the original deed, as the proof tends to show his attorneys did, before tak-

ing his title, there was nothing there to put even a cautiously prudent man upon inquiry. It is true the grantee's name, and the other matters before referred to, were apparently written by some other than the scrivener who drafted the body of the deed, but when, under what circumstances, there was nothing to indicate.

Certainly, it could be as well presumed that this was done before the deed passed from the hands of the grantor as afterward. And this was as true of his attorneys as of himself, except as to the knowledge of the handwriting. Then, the fact insisted upon that these attorneys, some months before, for another party, had examined Perry's title and declined to give an opinion that it was correct, is without force, for the reason that then his title rested alone upon the mortgage foreclosure; there was no record evidence of title through J. N. Bartholow. Not knowing certainly the facts as to the *authority of the attorney to accept service of the original notice*, they would not say to the then searcher of the title, that it was indisputably good. When called upon by Roberts, however, they found that Perry had title through another and apparently perfect source; with nothing to throw suspicion on it; and therefore, conceding that the client would be bound by the attorney's knowledge acquired months before and when in the employment of another, we should still have to hold that the rule did not apply.

It is true that some time elapsed between the date of the deed from Owen to Bartholow and its recording; but not more than often occurs in transactions, the correctness of which no one would think of questioning. It is also true that young Bartholow, as he said, for Perry, employed counsel to bring the suit, which barred plaintiff's right of redemption. But of this, Roberts had no knowledge, and in the fact itself, there is but little if any significance.

The difficulty with plaintiff's case is, that the confidence reposed by him in his agent has been, it may be conceded, most wickedly betrayed. But he placed it in the power of this agent to deceive and injure others. He desired to sell this land — to sell as promptly and with as little delay as possible. In the utmost good faith, and relying most implicitly upon the integrity and ability of this agent, he sent him this deed, with full authority, so far as third persons were concerned, buying in good faith and for value, to act for him, fill it up and deliver it. He did no more than this. When these blanks were filled the deed was perfect. And this was what the parties intended. No word of all their correspondence contradicts this. When thus filled and delivered, the delivery was the act of the grantor. It is not necessary that the possession of the instrument by the grantee, in order to a valid delivery, shall be simultaneous with the assent thereto in the grantor's mind, but it may take place long afterward, as it may before. This assent, when given, whether in person or by agent, gives character to the possession, and, when given, imparts, thus far, validity to the deed. But, without pursuing the subject further, see 1 Greenl. 568, note 3; Greenl. Cruise, vol. 4, p. 25, marg. note 2 ; as also cases cited by appellant's counsel.

We, therefore, without reaching the second point in the case, hold, that the plaintiff has failed to show sufficient ground for disturbing the title of defendant Roberts, derived through the Bartholow-Perry deed, and that his bill should be dismissed. The judgment will be reversed and cause remanded for this purpose.

Reversed.