Adams v. Ryan.

## Adams v. Ryan.

1. **Fraudulent Conveyance:** EVIDENCE NOT ESTABLISHING. Upon consideration of the evidence in this case, (see opinion,) it is *held* insufficient to set aside plaintiff's legal title on the ground that the conveyance to him was fraudulent.

2. ——: BURDEN OF PROOF. The burden of proof is upon him who seeks to set aside a legal title on the ground of fraud.

3. **Deed:** DELIVERY OF: FACTS CONSTITUTING. Where a deed was made to plaintiff in his presence, and plaintiff, instead of taking the deed, directed the notary public who drew it to send it to the county recorder for record; but the notary put the deed in his safe, and for some months forgot to send it for record, *held* that the facts constituted a delivery to plaintiff on the day the deed was made, and that the notary held it subject to his order.

4. **Fraudulent Conveyance**: EVIDENCE: RELATION OF PARTIES. It is always competent to show the relationship of the parties to an alleged fraudulent conveyance; but such evidence is not sufficient to avoid a legal title, without a showing that there was a want of consideration, or that the grantee had knowledge of the fraudulent intent of the grantor.

*Appeal from Marion Circuit Court.*

THURSDAY, OCTOBER 18.

THIS is a controversey concerning the ownership of an eighty acre farm in Marion county. The legal title to the land is in the plaintiff, and he acquired the same by a conveyance from one Chamberlain, which conveyance was made on the 18th of October, 1880. At the November term, 1880, of the Jasper District Court, Loretta Shropshire, Adm'x, reovered a judgment against Chamberlain, a transcript of which was filed in the office of the clerk of the district court of Marion county on December 10th, 1880. Execution was issued on this judgment, and the land in controversy was levied upon as the property of Chamberlain, and on the 22d day of January, 1881, the same was sold by the sheriff to the defendant. This action was commenced to remove the alleged cloud upon the title arising from the sheriff's sale, and to quiet the title in the plaintiff. The defendant in his answer, and in a cross bill filed by him, set up that the conveyance made by Chamberlain to the plaintiff was fraudulent and void as to the creditors of Chamberlain, and he asked that the title of the plaintiff be decreed to be junior and inferior to the rights of the defendant based upon the sheriff's sale. The plaintiff replied by denying that the conveyance to him was fraudulent. The cause was tried in the court below upon depositions and record evidence, and a decree was entered for the defendant. Plaintiff appeals.

*Stone, Ayers & Co.*, for appellant.

*Ryan Bros.*, for appellees.

ROTHROCK, J.—Counsel for plaintiff claim that the defendant, being a purchaser at a sheriff's sale, cannot impeach the plaintiff's title for fraud. We do not find it necessary to determine this question, and will proceed at once to a determination of the question as to the character of the conveyance from Chamberlain to plaintiff. It is proper to state at the outset that, if the plaintiff's conveyance is not voidable for fraud, he can maintain his action to remove the cloud cast upon his title by the sheriff's sale. The cause is in equity, and is triable anew in this court, and, as it was tried in the court below on depositions and record evidence, there was nothing in the appearance of the witnesses or their manner in testifying which gave the court below any aid in determining the facts. We come, therefore, to the consideration of the case with the evidence before us in writing, the same as it was in the court below. Chamberlain, the plaintiff's grantor and the defendant in the judgment under which defendant claims the land, was at the time of the conveyance an unmarried man somewhat advanced in life. The plaintiff is his brother-in-law.

1. FRAUDULENT conveyance: evidence not establishing.

He is a married man of middle age, and the father of four small children. The plaintiff had been for five or six years before the conveyance of the land to him a tenant farmer, during which time he had from two to three horses, and the necessary farming utensils to carry on his business. It is shown beyond question that all the time he was thus engaged he had cows, stock, cattle, and hogs, and, at times, in considerable number. The evidence does not show that he was at any time insolvent or in debt. He at all times had property liable to execution. He and Chamberlain are shown to have been in partnership in farming, and in the ownership of live stock, for at least part of the time, and at one time they held a joint public sale and disposed of some stock.

Chamberlain purchased the farm in controversey in the spring of 1880, and the plaintiff immediately took possession of it. At the time of the purchase, and at other times,

Chamberlain stated that he had made the purchase of the farm for the plaintiff. And he repeatedly stated that he was indebted to the plaintiff. It is true, he made contradictory statements as to such indebtedness, and we do not regard his declarations as being very material evidence. But the fact remains that the plaintiff always claimed that Chamberlain owed him. The plaintiff in his testimony stated fully the consideration given by him for the farm. He claimed in his testimony that he assumed the payment of a mortgage upon it for some $600, and paid the balance of the consideration by a cancellation of the indebtedness of Chamberlain to him. *There is no evidence in the record that the plaintiff knew when he took his conveyance that Chamberlain had any fraudulent intent.* Indeed, it does not appear that he knew that Chamberlain was indebted to Loretta Shropshire, Adm'x, and there is no evidence that Chamberlain was otherwise indebted. If the claim of the plaintiff that Chamberlain was indebted to him be true, the plaintiff paid a full consideration for the farm. There is nothing in the circumstances attending the transaction to justify a finding that Adams knew that Chamberlain had any fraudulent intent; and we cannot find from the evidence that Chamberlain was not indebted to the plaintiff. It must be remembered that the plaintiff holds the legal title to the farm, and the burden

2.———: BUR-
DEN of proof.

is upon the defendant to show that the title is fraudulent.

The conveyance from Chamberlain to the plaintiff was not filed for record until January 5, 1881, and counsel for

. 3. DEED: de-
livery of:
facts con-
stituting.

appellee claim that there was no delivery of the deed, and that the title did not pass until that time. The evidence shows that Chamberlain procured a notary public to write the deed, and, when it was made, the plaintiff was present and directed the notary to send it to the county recorder for record. The notary put the deed in his safe and forgot to send it for record. It is claimed that the notary was the agent of Chamberlain. But, when the

deed was made, the notary held it under the direction of the plaintiff, and was to send it to him. This was a delivery, because Chamberlain had no further control over it. It is true, Chamberlain was a brother-in-law of the plaintiff, and it is always competent to show the relationship of the parties to an alleged fraudulent conveyance. But the fact of the relationship will not warrant a finding of fraud, without some evidence that the plaintiff knew that Chamberlain intended by the conveyance to hinder, delay or defraud other creditors; and it cannot be found that plaintiff had such knowledge, without some evidence that he knew Chamberlain had other creditors. It is urged that, because the plaintiff had no notes or evidence of indebtedness against Chamberlain, his testimony as to the indebtedness should be disregarded. This is, at best, but a circumstance which, in connection with other evidence, might be sufficient to stamp the transaction as fraudulent, but, in view of all the other evidence in the case, we are not prepared to hold that there was not an indebtedness to the full extent claimed by the plaintiff. In conclusion, it is scarcely necessary to say that, without a showing that there was a want of consideration for the conveyance, or that the same was made with at least a knowledge by the grantee of the fraudulent intent of the grantor, the legal title must stand.

4. FRAUDU-LENT convey-ance: evi-dence: rela-tion of par-ties.

REVERSED.