SELMA BAKER, Administratrix, Appellant, v. DES MOINES CITY RAILWAY COMPANY, Appellee.

**WITNESSES:** Cross-Examination—Permissible Scope. A witness may 1 always be cross-examined on any material *inference* fairly arising from his direct examination.

**NEGLIGENCE:** Acts Constituting—Negative Testimony Not Creating 2 Conflict. Testimony of a witness whose sight and hearing are unimpaired, to the effect that he looked in the direction from which a street car would approach, and saw and heard none; creates no conflict of evidence, in view of the fact (1) that the approaching car was then within 20 feet of him, and (2) that numerous others of plaintiff's witnesses in a position to know, testified that the bell on the car was ringing.

**HIGHWAYS:** Law of Road—Preference in Approaching Intersection. 3 The provision (Sec. 5035, Code of 1924) that, when two vehicles are so approaching on a highway that their paths will intersect, the preference in passage shall be accorded to the person approaching from the right, has no application to a street car or ordinary railway train.

**NEGLIGENCE:** Contributory Negligence—Avoidance Under "Last 4 Clear Chance." There is no occasion for a motorman in charge of a street car to act on the doctrine of the last clear chance when he has no reason to suppose that a driver approaching a crossing will place himself in a position of danger.

Headnote 1: 40 Cyc. p. 2507. Headnote 2: 36 Cyc. pp. 1618, 1620. Headnote 3: 36 Cyc. p. 1496. Headnote 4: 36 Cyc. p. 1631.

*Appeal from Polk District Court.*—O. S. FRANKLIN, Judge.

MARCH 17, 1925.

REHEARING DENIED MAY 12, 1925.

ACTION by an administratrix for damages for the wrong-fully caused death of her decedent, caused by an automobile collision with one of defendant's cars, upon an intersection within the corporate limits of the city of Des Moines. The defense was a general denial. At the close of all the evidence, the trial court directed a verdict for the defendant, and entered judgment accordingly. From this judgment the plaintiff has appealed.— *Affirmed.*

*Lappen & Carlson* and *F. O. Ross,* for appellant.

*W. H. McHenry* and *Corwin R. Bennett,* for appellee.

EVANS, J.—The accident in question happened on the intersection of Urbandale and Beaver Avenue. This intersection is within the corporate limits of the city, but is at its northwestern outskirts, and in its surroundings is the fair equivalent of a rural crossing. In approaching the street car tracks along Beaver Avenue, the obstructions to the view of the tracks on Urbandale are comparatively insignificant. The decedent was Edd Baker, who had engaged Abe Miller and his truck to transport a cow which Baker had purchased. Both men were riding in the truck upon the front seat, and within the cab. Both were large men, and they were somewhat crowded for space. Baker shifted to a sidewise position, so that his back was partially turned toward Miller. They were driving north on Beaver Avenue, in the early forenoon. Miller sat on the left side, and Baker on the right. Miller was driving. His actual destination was unknown to him. Urbandale Avenue crosses Beaver Avenue. from west to east at right angles. As Miller came to the crossing over the street railway, he came into collision with one of the defendant's east-bound cars. The car caught his truck engine at the front end, and brushed engine and truck to the right-hand side, being disengaged therefrom at the east curb of Beaver Avenue. Neither Miller nor Baker saw or heard the

car at any time before the collision resulted. The charge of neg-
ligence made in the petition is, in substance, that the car was
running at an excessive and dangerous rate of speed; that it
gave no signal of its approach; that the crossing was a danger-
ous one, in that a large amount of traffic passed over it, and for
that reason the defendant company should have required its
cars to stop, before entering upon the intersection; that the truck
had entered the intersection first, and had, therefore, the right
of way; and that the street car should have stopped, in order
to give the right of way to the truck. It is also pleaded that the
defendant could have stopped its car in time to avoid the acci-
dent after the motorman had discovered the peril of Miller and
the decedent.

The ruling of the trial court is defended both on the ground
of absence of negligence on the part of the defendant company.
and on the ground of the contributory negligence of the de-
cedent.

The motion to direct a verdict was made at the close of
plaintiff's testimony. We direct our first inquiry to the ques-
tion whether such testimony was sufficient to sustain a finding
by the jury of negligence. The negligence of Miller stands
out quite prominently in the record. As a circumstance, it has
an important bearing on the question of negligence of the de-
fendant railway company. Whether Baker should also be
deemed guilty of negligence contributing to his own injury, is a
question argued.

Preliminary to the main question, the appellant lodges com-
plaint against certain cross-examination of the witness Fickes.
Fickes was the motorman on the car involved in the collision.

1. WITNESSES: Complaint is made that his cross-examination
cross-examina- was not confined to the subject-matter of the
tion: permis-
sible scope. direct examination, and that, therefore, his evi-
dence on cross-examination is not binding on the plaintiff. We
see no fair ground of complaint of the cross-examination. While
the plaintiff restricted his direct examination, he nevertheless
laid the basis for certain inferences, more particularly the in-
ference that the witness saw the peril of the occupants of the
truck, and could have stopped his car in time to avoid it. The

cross-examination was directed and confined to that inference, and was proper.

In approaching the railway crossing from the south on Beaver Avenue, a good view is afforded for an indefinite distance, both to the east and to the west. 40 or 50 feet south of the crossing is a little store building, and on a switch track 150 feet west of the west side of Beaver Avenue is a small lime house, which worked no appreciable obstruction to the view at any point on Beaver Avenue. As Miller's truck approached the crossing, there was another truck 40 or 50 feet ahead of him. This truck stopped within 15 or 20 feet of the rails, in order to let the street car go by. Approaching the same crossing from the north, and along the west curb of Beaver Avenue, was another truck, which came close to the rail, and stopped to await the passing of the street car. Miller ignored both of these trucks, and drove by the north-bound truck on its left side, so that he came to the rails about the center of the intersection. Before his car had reached the rails, the street car passed by, brushing the front end of the truck, as already indicated. The occupants of the south-bound truck on the north side of the track were used as witnesses by the plaintiff. They described the street car in its approach, as coming at 10 or 12 miles an hour, and ringing the bell. They described Miller's truck as coming at about the same rate of speed. They also testified that the street car checked its speed as it came into the intersection. Sufficient to say at this point that there is no evidence of excessive speed. Neither is there any evidence that the crossing was a peculiarly dangerous one because of congestion of traffic or otherwise. It was dangerous in the sense that all railway crossings are dangerous. The only traffic at the crossing at the time of the collision, besides that of Miller and Baker, consisted of the two trucks already described. The motorman saw the approach of Miller's truck when it was 40 or 50 feet away. It was then behind the other truck, which had come, or was coming, to a stop. The first apprehension that the motorman had of a possible collision was when Miller's truck drove by the standing truck which had been ahead of him. He was then within 10 feet of the rail, and the street car was within

2. NEGLIGENCE: acts constituting: negative testimony not creating conflict.

the same distance from the collision point. Miller testified that, when he was 20 feet from the rail, he looked to the west for a street car, and saw none and heard none. But the car at that time was in fact within 20 feet of the collision point, and was in fact ringing its bell. We have held that, in such a case, the fact that the party to the collision testified that he looked and did not see, does not create a conflict of evidence. This witness testified that his faculties of sight and hearing were unimpaired. If, under such circumstances, his testimony that he did not see the car cannot be considered as presenting a conflict, we see no fair reason, under the facts in this case, for saying that his failure to hear the bell presents a conflict, where all the other witnesses of the plaintiff testify affirmatively to the fact. As proof that the motorman failed to ring his bell on approaching the crossing, the appellant relies wholly upon this testimony by Miller. Under the circumstances shown, we do not think it can be considered as presenting a conflict. It must be held, therefore, that there was no excessive speed, and that there was no failure to ring the bell.

The point most insistently argued by the appellant is that the truck first entered the intersection, and that it therefore had the right of way, and that the defendant was guilty of negligence in failing to recognize his right in that respect. This argument is predicated in the main upon Paragraph i of Section 26 of Chapter 275 of the Acts of the Thirty-eighth General Assembly, which provides as follows:

3. HIGHWAYS: law of road: preference in approaching intersection.

"Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way."

This argument overlooks or ignores Section 2 of the same act, which provides as follows:

"In all laws of this state regulating motor vehicles, the term 'motor vehicle,' except where otherwise expressly provided, shall include all vehicles propelled by any power other than muscular power, except traction engines, road rollers, fire wagons and engines, police patrols, city or town ambulances, city and government vehicles clearly marked as such, and *such*

*vehicles as are run only upon tracks or rails."*

We deem it clear that the statute relied upon by appellant has no reference or application to a street car or to a railway train. While it is broadly true that all users of streets, whether pedestrian or vehicle, have an equal right to the use thereof, and that this includes the street car, yet the rights of each must be exercised with due regard to the rights and safety of others. As between vehicles, the lighter vehicle will presumptively yield the right of way to the vehicle which is confined to the rails, and which is usually the heavier and more unwieldy. *Hollgren v. Des Moines City R. Co.,* 174 Iowa 568; *Sandell v. Des Moines City R. Co.,* 184 Iowa 525. The appellant cannot therefore predicate affirmative negligence merely upon the fact that the street car failed to yield to him his alleged right of way. He had no right of way.

The only other ground of negligence charged is the failure of the defendant to avail itself of the last clear chance to avoid the accident. As the motorman approached this intersection, he saw the truck on the north side coming to a stop. He likewise saw the truck on the south side, which had come to a stop. Each was manifestly waiting for the street car to pass; while from the south the Miller truck was approaching, and was about to come up to the standing truck which preceded it. Was there anything in such a situation which could fairly be said to suggest to the motorman danger of collision with the truck which was farthest away? The motorman testified that he first saw the Miller truck when it was 40 or 50 feet away. That was his distance also from the final point of collision. When he further testified that his first discovery of danger of a collision was when the Miller truck was within 10 feet of the rail, is there anything in the circumstances presented that impeaches such statement? The action of Miller in driving his truck past the other standing truck and up to the rail, under the circumstances here appearing, is quite inexplicable. The only explanation offered is that already referred to, that he looked for a car and saw none.

Taking the facts, therefore, precisely as they appear in the testimony for the plaintiff, a jury would not be warranted in

4. NEGLIGENCE: contributory negligence: avoidance under "last clear chance."

finding that the motorman had time to bring the car to a stop after his discovery of the peril, and before the collision.

We reach the conclusion, therefore, that the trial court properly directed a verdict on this ground. Its judgment is, accordingly, affirmed.—*Affirmed.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.